UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| TOBY T. MAXWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00142-JMS-DLP |
| | ) | |
| CYNTHIA YORK, | ) | |
| KIM HOBSEN, | ) | |
| BOBBI RIGGS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DISCUSSING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Toby T. Maxwell, an inmate at New Castle Correctional Facility, brought this civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his Eighth Amendment rights while he was an inmate at Wabash Valley Correctional Facility ("Wabash Valley"). The defendants moved for summary judgment. Dkt. 54. Mr. Maxwell responded and the defendants replied. Dkts. 74 & 79.

Defendant Cynthia York withdrew her motion for summary judgment in recognition of the genuine dispute of material fact as to whether she provided constitutionally adequate care to Mr. Maxwell and whether he was harmed as a result.

The motion for summary judgment filed by Defendants Kim Hobsen and Bobbi Riggs is now ripe for review. For the reasons explained in this Order, defendant Kim Hobsen is entitled to summary judgment and defendant Bobbi Riggs is not entitled to summary judgment.

**I.
Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708,

717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II.
## Factual Background

On Saturday, June 25, 2016, Mr. Maxwell was struck on the right side of his face with a padlock wrapped in a sock, which fractured his right orbital lobe and injured his right eye. Dkt. 72-1. Mr. Maxwell was immediately in severe pain that throbbed and radiated throughout the entire right side of his head and face. He also experienced immediate swelling at and around his right eye, which caused that eye to become swollen shut.

Mr. Maxwell was seen at the infirmary by defendant Cynthia York. He told Nurse York he was in extreme pain—ten out of ten—and could not open his eye. Nurse York's chart for the visit states that Mr. Maxwell reported to her that "somebody punched me in the face," his pulse was 112 beats/minute, his vital signs were elevated as a result of the altercation, his right eye was swollen shut, and his blood vessels were "bursted" [sic] on the right side of his eye. Dkt. 55-2 at 107-108. Nurse York could not complete an assessment of Mr. Maxwell's eye because it was swollen shut. She charted that Mr. Maxwell had "alteration in comfort" and had "potential for altered sensory perception."

3

Mr. Maxwell asked Nurse York to call the on-call doctor to address his injuries and prescribe a stronger pain killer than aspirin. Dkt. 72-1. Nurse York refused to contact the on-call doctor, instructed Mr. Maxwell to submit a healthcare request, offered him additional aspirin, provided him an ice pack, and sent him back to his cell-house. Mr. Maxwell could not sleep that night. His pain was "constant and exquisite." Taking aspirin did not alleviate the pain; rather, it caused stomach pain. *Id*.

On Sunday, June 26, 2016, Mr. Maxwell submitted a healthcare request form, stating: "I got hit in the eye with a lock Saturday night and I have yet to receive any medical attention. I am and have been in pain and I need to see someone right away. Thank you!" Dkt. 55-2 at 183 (Excerpt from Plaintiff's Medical Records). The healthcare request Mr. Maxwell submitted shows a "received" date of June 28, 2016, two days after he submitted it. Dkt. 55-2 at 183.

Also on Sunday, June 26, 2016, on three different occasions, a nurse came to Mr. Maxwell's cell for an insulin shot. All three times, Mr. Maxwell reported he was in extreme pain. The nurse provided no treatment, refused to call the on-call doctor, and told him to submit a healthcare request. Dkt. 72-1.

On Monday, June 27, 2016, Mr. Maxwell spoke to Nurse Knust about his pain and blurred vision. Nurse Knust responded that she had been instructed not to give Mr. Maxwell anything for his pain. Dkt. 72-1. On that same day, he was moved to a new housing unit. Upon entering that unit, the floor officer saw his injury and sent him to the infirmary for medical treatment. At the front desk of the infirmary, and in Mr. Maxwell's presence, correctional officer Merritt made several calls to have a medical staff member render him assistance. While Mr. Maxwell was still at the front desk of the Infirmary, officer Merritt received a call back from nurse Barbara Riggs.

When that call concluded, officer Merritt told Mr. Maxwell to fill out a healthcare request form and then sent him back to the cell-house. *Id.*

Over the course of Sunday, June 26, 2016, until he was seen by Dr. Mary Chavez on Wednesday, June 29, 2016, Mr. Maxwell's pain did not subside. The only painkiller he had access to was aspirin, which he was taking as much as possible, and which was only upsetting his stomach. The pain to his eye was acute that any light exposure—even normal levels of artificial light indoors—caused more pain. *Id.*

On Wednesday, June 29, 2016, at approximately 4:15 pm, a full four [4] days after Mr. Maxwell was injured, Mr. Maxwell was called to the infirmary by Dr. Mary Chavez. When seen by Dr. Chavez on Wednesday, June 29, 2016, Mr. Maxwell was unable to open his right eyelid. He could not count fingers or see Dr. Chavez's face. Dr. Chavez called Dr. Samuel Byrd to also assess his injury. Dr. Chavez then called Dr. Brian Buller, the Regional Medical Director, who approved Mr. Maxwell to be sent to the Terre Haute Regional Hospital. *Id.*

Once at the Terre Haute Regional Hospital, a CT scan revealed "fractures involving the right orbital floor and medial wall of the right orbit." Dkt. 55-2 at 112 (Excerpt from Plaintiff's Medical Records). An examination of Mr. Maxwell's eye showed he was unable to move it laterally, had difficulty raising his right eyelid, and was experiencing photosensitivity. *Id*. The consulting physician determined that "even though the injury was four [4] days ago, this is an Ophthalmic Surgical Emergency." *Id*. at 112. Mr. Maxwell was administered Hydromorphone. *Id*. at 118.

Mr. Maxwell was then transferred to the Eskenazi Trauma Center in Indianapolis. Dkt. 72-1. At Eskenazi, the medial wall and orbital floor fractures were confirmed, and Mr. Maxwell was also determined to be suffering from traumatic iritis. Dkt. 55-2 at 121. Mr. Maxwell was prescribed

Hydrocodone and Acetaminophen for the pain and eye drops with instructions to take for seven [7] days. *Id*. at 123, 125.

The painkillers Mr. Maxwell was given at the Terre Haute Regional Hospital and Eskenazi and prescribed following discharge immediately helped control the pain. While it was still significant, it was at least manageable upon given these painkillers. Dkt. 72- 1. Mr. Maxwell's right eye injuries will require annual follow-up visits once a year for ten years. Dkt. 55-2 at 78, 133.

Defendant Kimberly Hobson was the Health Services Administrator at Wabash Valley at the time of Mr. Maxwell's eye injuries. Dkt. 55-3. Nurse Hobson's testimony is that clinical actions regarding health care services are the sole responsibility of qualified mid- and upper-level health care providers, such as a nurse practitioner, physician assistant, or physician.

On July 4, 2016, Mr. Maxwell submitted an informal grievance stating he was refused medical treatment until Wednesday, June 29, 2016. Nurse Hobson responded to his grievance on July 14, 2016, stating, "I do not have an explanation for why you were not seen prior to Wednesday." Dkt. 55-4.

### III.
### Discussion

**A. Kim Hobson**

Mr. Maxwell argues that Kim Hobson, the Health Services Administrator at Wabash Valley, is not entitled to summary judgment because a jury could infer that she was aware of Mr. Maxwell's need for care before he saw a doctor on June 29, 2016, based on her oversight role and the fact that Mr. Maxwell completed a healthcare request form that took two days to complete, reported his extreme pain to a nurse three times on June 26, 2016, and that a floor officer at the

6

infirmary's front desk made several calls to medical staff seeking treatment for Mr. Maxwell on June 27, 2016.

Kim Hobson argues that she was not aware of Mr. Maxwell's injury until she reviewed his informal grievance sometime after it was submitted on July 4, 2016. Dkt. 55-3. Mr. Maxwell has produced no evidence to the contrary. His attempt to draw a reasonable inference of her earlier knowledge from the undisputed facts fails because it is based solely on conjecture and speculation. *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012).

Mr. Maxwell also argues that Ms. Hobson's response to his informal grievance, in which she stated that she did not know why Mr. Maxwell was not seen by a doctor before June 29, 2016, creates an inference that there was no explanation for the delay in his medical care. While this evidence might be used to support a finding of deliberate indifference for the medical professionals who were aware of Mr. Maxwell's condition before June 29, 2016, it does not prove that Ms. Hobson was aware of his condition before he was seen by a doctor on June 29, 2016. *See Grieveson v. Anderson*, 538 F.3d 763, 780 (7th Cir. 2008) ("Grieveson does not proffer sufficient evidence to survive summary judgment for any other delays in medical treatment because he does not show that the named defendants were personally involved in the other delays").

For these reasons, there is no material fact in dispute and Ms. Hobson is entitled to summary judgment.

**B. Bobbi Riggs**

Nurse Riggs contends that she had no knowledge of Mr. Maxwell's injuries until she reviewed a healthcare request from Mr. Maxwell on June 28, 2016. She scheduled him for a doctor's appointment the next day because she did not believe he had any urgent medical needs, based on "the record" and Mr. Maxwell's healthcare request. *Id*.

7

Mr. Maxwell's request stated that he had been hit in the eye with a lock, had not received any medical attention, was in pain, and needed to see someone right away. Dkt. 55-2 at 183. Furthermore, Nurse York's charting indicated that Mr. Maxwell's eye was swollen shut, and his blood vessels were "bursted" [sic] on the right side of his eye. Dkt. 55-2 at 107-108. Nurse York also charted that Mr. Maxwell had "alteration in comfort" and had "potential for altered sensory perception."

A jury could reasonably find that these medical records, combined with Mr. Maxwell's healthcare request, put Nurse Riggs on notice that Mr. Maxwell needed immediate medical attention and that her delay in scheduling him to see the doctor caused him needless pain.

In addition, Mr. Maxwell alleges that, after being sent to the infirmary by a correctional officer on June 27, 2016, the guard outside the infirmary spoke with Nurse Riggs on the phone. After the call ended, the guard sent Mr. Maxwell back to his housing unit and told him to fill out a healthcare request form. Dkt. 72-1. Mr. Maxwell's affidavit does not indicate how he knew it was Nurse Riggs on the phone with the guard. If based on hearsay, such evidence would not be admissible at trial. "[A] court may consider only admissible evidence in assessing a motion for summary judgment." *Parker v. Four Seasons Hotels, Ltd.,* 845 F.3d 807, 812 n. 3 (7th Cir. 2017). However, if the evidentiary issues can be overcome at trial, this evidence would also support a jury finding that Nurse Riggs was aware of Mr. Maxwell's medical needs before reviewing his healthcare request form on June 28, 2016.

There is a material issue of disputed fact as to whether Nurse Bobbi Riggs was deliberately indifferent to Mr. Maxwell's serious medical condition. Therefore, she is not entitled to summary judgment.

## IV.
## Conclusion

For the reasons stated in this Order, the defendant's motion for summary judgment, dkt. [54], is **granted as to Kim Hobson and denied as to Nurse Bobbi Riggs**. The claims against Nurses Bobbi Riggs and Cynthia York shall proceed to settlement or trial by jury. The Magistrate Judge is requested to discuss further development of the action at the upcoming status conference.

**IT IS SO ORDERED**.

Date: 7/23/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

TOBY T. MAXWELL
964226
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Nathan Aaron Pagryzinski
BLEEKE DILLON CRANDALL, P.C.
nathan@bleekedilloncrandall.com

Alexander Phillip Pinegar
CHURCH CHURCH HITTLE & ANTRIM
apinegar@cchalaw.com


Magistrate Judge Doris L. Pryor